## ELGIN NAT. WATCH CO. v. ELGIN RAZOR CORPORATION et al.

### No. 16175.

District Court, N. D. Illinois, E. D.

Nov. 29, 1938.

Rogers, Woodson & Rogers, of Chicago, Ill., for plaintiff.

James R. McKnight, of Chicago, Ill., for defendants.

WILKERSON, District Judge.

Plaintiff has applied for a temporary injunction. Defendants have answered the bill and both sides have filed affidavits.

Plaintiff has a trade-mark "Elgin" which was registered in the United States Patent Office on November 7, 1905, No. 47,470 (renewed). Plaintiff has used this trade-mark in interstate commerce on a diversified line of mechanical products, chiefly time-keeping instruments. But defendant also has a trade-mark "Elgin" for electric razors sold in interstate commerce, which trade-mark was registered in the United States Patent Office on July 19, 1938, Registration No. 35,870. The name "Elgin" has been used for many years by the plaintiff in its business, but the name "Elgin" is also used as a trade-mark by many persons and companies in many different businesses. It is a geographic name which may be made a trade-mark only under the ten-year proviso of the Trade-Mark Act of 1905, Tit. 15 U.S.C., sec. 85, 15 U.S. C.A. § 85.

Under such circumstances, before a preliminary injunction will issue, the proof should be clear. Plaintiff in its brief (p. 26) says that at the final hearing competent testimony will be introduced to establish that the name "Elgin" has acquired a secondary meaning.

The main inquiry is as to whether defendants' manufacture and sale of electrical razors are in any way related to plaintiff's business. Plaintiff's business is not entirely confined to watches. Its business was established in 1864. It is one of the largest concerns in the United States engaged in the manufacture and sale of time-keeping instruments, under the trade-mark "Elgin". Plaintiff was incorporated not only for the business relating to watches and clocks, but also jewelry and mechanical instruments and devices and parts. For many years plaintiff has been engaged in the manufacture and sale of automotive, aircraft, railroad and motor boat instruments, such as tachometers, altimeters, compasses, air speed indicators, ships' chronometers, time fuse gear train mechanisms, chart boards, revolution indicator transmitters, shaft rotation direction indicators and various other mechanical devices. These products are likewise sold under the trade-mark "Elgin".

Plaintiff's annual sales of products bearing the trade-mark "Elgin" are in excess of $10,000,000, and plaintiff has spent in excess of $20,000,000 in advertising its products.

A number of instances are given of manufacturers who have expanded their operations into the manufacture of electric clocks. The business of manufacturing electric clocks seems to be reasonably related to the business of manufacturing electric razors. Whether a business such as plaintiff's may be related to a business such as defendants' must depend largely upon the facts and circumstances of each case. In the present case the evidence tends to show that there is at least more than a mere possibility of confusion in the minds of the public and in the minds of dealers. Plaintiff has established a good will and reputation for many years for the excellence and precision of its watches and other delicately adjusted and balanced instruments. Defendants advertise that their razor has a "precision" motor, and in one instance at least, as shown by the advertisement in the Boston Herald of August 25, 1938, they advertise that the Elgin electric razor is "Precision built, like a watch". Defendants also advertised in the National Jeweler in May, 1938, in the name of Elgin Laboratories (Pl. Ex. 8, second affidavit of Lampa). An advertisement in a jewelry magazine of a razor made by Elgin Laboratories is not unlikely to lead readers to believe that the Elgin National Watch Company is now putting out electric razors and advertising them to the jewelry trade. Plaintiff's affidavits show a number of instances of department store salesmen actually stating in substance (whether mistakenly or not is immaterial) that defendants' Elgin electric razor was in some way related to or had its origin with the Elgin National Watch Company. While plaintiff's affidavits may not be as satisfactory as they might be, because of failure to identify more specifically the salesmen, and while defendants have offered affidavits in denial, still, in view of the advertisements and other evidence in the record, they cannot be altogether ignored.

Plaintiff contends that defendants' purpose in adopting the name "Elgin" was to trade upon the good will and reputation of plaintiff. Defendant Schiff denies this, and states that he came to use the name "Elgin" several years ago in connection with a cigarette lighter. This protestation, however, may be viewed in the light of other facts. Defendant Schiff, in carrying

888

on his various activities, has on occasions used well known names or simulations thereof. A list of names used by him is given in the affidavit of Mote and is set forth in plaintiff's brief (p. 38) as follows: Luckey Strike Mfg. Co., Shavemaster, Inc., Elgin Razor Corp., Elgin Laboratories, Shafer and Company, Vitanola Talking Machine Co., Old Reliable Mfg. Co., Fay Mfg. Co., Electric Clock Corp. of America, International Products Company, Motor Engineering Company, Atlas Metal Works, Inc., Match King, Inc., Fire Chief, Inc., General Chromium and Copper Co., Kean Products Co.

Defendant, Elgin Razor Corporation, was originally incorporated under the name Shavemaster, Inc., an Illinois corporation, in September, 1938. It put out electric razors under the trade-mark "Shavemaster". It was sued in this district, case 15563, by Chicago Flexible Shaft Company, the manufacturer and distributor of a household electric appliance sold under the trademark "Mixmaster". A consent decree was entered on April 13, 1937, and on April 16, 1937, the name of Shavemaster, Inc., was changed to Elgin Razor Corporation.

Mr. Schiff was also a defendant in the case of Hammond Clock Co. v. Henry T. Schiff et al., equity No. 9710 in this court, in which a decree finding infringement of four patents relating to the manufacture of electric clocks was entered. That decree was affirmed in the Court of Appeals, 7 Cir., 69 F.2d 742.

These instances of similar acts are relevant to some extent in determining the intent with which the name "Elgin" was adopted by defendant Schiff. In Penn. Mut. Life Ins. Co. v. Mechanics' Savings Bank & T. Co., 6 Cir., 72 F. 413, 422, Justice Taft observes: "It is a well-established rule of evidence that, where the issue is the fraud or innocence of one in doing an act having the effect to mislead another, it is relevant to show other similar acts of the same person having the same effect to mislead, at or about the same time, or connected with the same general subject-matter. The legal relevancy of such evidence is based on logical principles. It certainly diminishes the possibility that an innocent mistake was made in an untrue and misleading statement, to show similar but different misleading statements of the same person about the same matter, because it is less probable that one would make innocent mistakes of a false and misleading character in repeated instances than in one instance."

The advertisement of a $15 Elgin electric razor at prices ranging from $2.95 to $5 may to some extent reflect on plaintiff's good will and reputation. If the Elgin electric razors are in fact, as well as in price, cheap and of inferior quality and therefore not "precision built", whether or not like a watch or an Elgin watch, plaintiff's good will and reputation may also be adversely affected.

In view of all the circumstances I find that plaintiff is entitled to some protection pending the outcome of the suit. In my opinion the defendant should be required to print or write on all labels and printed matter, in a prominent and effective manner, a statement in substance informing dealers and purchasers that the name "Elgin" or "Elgin Laboratories" is in no way related to Elgin National Watch Company.

Injunction will be issued on plaintiff's filing bond in the sum of $2,500.

Plaintiff's attorneys are directed to prepare the necessary order.